**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF WASHINGTON**

Case No. 12-CV-00388-VEB

| | |
|---|---|
| JOHN D. CONLEE, | |
| Plaintiff, | DECISION AND ORDER |
| vs. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

## I. INTRODUCTION

In June of 2004, Plaintiff John D. Conlee applied for Supplemental Security Income ("SSI") benefits and Disability Insurance Benefits ("DIB") under the Social Security Act. The Commissioner of Social Security denied the applications.

Plaintiff, represented by Rebecca M. Coufal, Esq., commenced this action seeking judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).  The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 6).

On February 3, 2014, the Honorable Rosanna Malouf Peterson, Chief United States District Judge, referred this case to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 23).

## II. BACKGROUND

The procedural history may be summarized as follows:

On June 23, 2004, Plaintiff applied for SSI benefits and DIB, alleging disability beginning November 7, 2002. (T at 47).[1]  The applications were denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  On July 17, 2007, a hearing was held before ALJ Marguerite Schellentrager. (T at 792).  On August 28, 2007, ALJ Schellentrager issued a written decision denying the applications for benefits and finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (T at 44-60).  Plaintiff sought review by the Social Security Administration's Appeals Council.  On March

---

[1] Citations to ("T") refer to the administrative record at Docket Nos. 11 & 18.

DECISION AND ORDER – CONLEE v COLVIN 12-CV-00388-VEB

10, 2009, the Appeals Council granted Plaintiff's request and remanded the matter for a supplemental hearing.  (T at 36-39).

A supplemental hearing was held before ALJ Schellentrager on December 10, 2009. (T at 746-90).  On May 19, 2010, the ALJ issued a second decision denying the applications for benefits. (T at 18-33).  The ALJ's second decision became the Commissioner's final decision on June 29, 2012, when the Appeals Council denied Plaintiff's request for review. (T at 8-10).

On June 8, 2012, Plaintiff, acting by and through his counsel, timely commenced this action by filing a Complaint in the United States District Court for the Eastern District of Washington. (Docket No. 5). The Commissioner interposed an Answer on September 5, 2012. (Docket No. 10).

Plaintiff filed a motion for summary judgment on March 13, 2013. (Docket No. 19).  The Commissioner moved for summary judgment on April 25, 2013. (Docket No. 20).  As noted above, the parties consented to the jurisdiction of a Magistrate Judge. (Docket No. 6).

For the reasons set forth below, the Commissioner's motion is granted, Plaintiff's motion is denied, and this case is dismissed.

# III. DISCUSSION

## A.    Sequential Evaluation Process

The Social Security Act ("the Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404. 1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether plaintiff has a medially severe impairment or combination of impairments. 20 C.F.R. §§

4

404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from performing work which was performed in the past. If a plaintiff is able to perform previous work that plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, plaintiff's residual functional capacity (RFC) is considered. If plaintiff cannot perform past relevant work, the fifth and final step in the process determines whether plaintiff is able to perform other work in the national economy in view of plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish a *prima facie* case

of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once plaintiff establishes that a mental or physical impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" that plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## B.    Standard of Review

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold a Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)(citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebreeze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989)(quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the Commissioner, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

## C.    Commissioner's Decision

In her second decision, which is now the Commissioner's final decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 7, 2002 (the alleged onset date) and met the insured status requirements under the Social Security Act through June 30, 2007. (T at 23). The ALJ determined that Plaintiff's right knee pain, degenerative joint disease of the left knee, status-post open reduction and internal fixation of the left lower extremity, left knee arthroscopy and meniscectomy, total knee replacement, anxiety disorder, depressive disorder, learning disorders, and polysubstance dependence were impairments considered "severe" under the Act. (Tr. 23-24).

However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments set forth in the Listings. (T at 24-25).  The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, as defined in 20 CFR § 416.967 (a) and §404.1567 (a), except that he would be limited to simple, repetitive tasks that involved working with "things" rather than people. (T at 25-32).

The ALJ found that Plaintiff could not perform his past relevant work as an electrician. (T at 32).  However, considering Plaintiff's age (35 years old on the alleged onset date), education (marginal), and RFC (sedentary work, with non-

exertional limitations as outlined above), the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 32-33).

As such, the ALJ concluded that Plaintiff had not been disabled, as defined under the Act, from November 7, 2002 (the alleged onset date), through May 19, 2010 (the date of her second decision) and was therefore not entitled to benefits. (Tr. 33). As noted above, the ALJ's second decision became the Commissioner's final decision on June 29, 2012, when the Appeals Council denied Plaintiff's request for review. (Tr. 8-10).

## D.    Plaintiff's Arguments

Plaintiff contends that the Commissioner's decision should be reversed. He offers two (2) main arguments in support of this position. First, Plaintiff challenges the ALJ's credibility determination. Second, he contends that the ALJ erred by failing to obtain additional testimony from a vocational expert during the second administrative hearing. This Court will address both arguments in turn.

# IV. ANALYSIS

## A.    Credibility

A claimant's subjective complaints concerning his or her limitations are an important part of a disability claim. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004)(citation omitted). The ALJ's findings with regard to the claimant's credibility must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Leste*r, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. § 404.1529(b), 416.929; SSR 96-7p.

In this case, Plaintiff testified as follows: his knee pain limits his ability to stand and climb ladders. (T at 768).  His knee pain worsened after receiving a knee

replacement. (T at 815).  He has difficulty sitting comfortably. (T at 819).  He has limited feeling in several fingers and thumb on his right hand, which makes it difficult to perform fine motor tasks. (T at 828).  His concentration and memory are impaired as a result of his chronic pain. (T at 829).  His ability to sit and stand for extended periods is limited. (T at 830).  He occasionally uses a cane. (T at 830).  Lower back pain is a serious problem and requires frequent changing of positions. (T at 830-31).

The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but found his statements concerning the intensity, persistence, and limiting effects of the symptoms not fully credible. (T at 26).  This Court finds that substantial evidence supports the ALJ's assessment.

The ALJ noted Plaintiff's history of drug-seeking behavior, which is an appropriate basis for discounting a claimant's complaints. *See Lewis v. Astrue,* 498 F.3d 909, 910 (9th Cir. 2007); *Koellman v. Astrue*, No. CV-09-261, 2010 U.S. Dist. LEXIS 83774, at *18 (E.D.Wa. Aug. 16, 2010)("Drug seeking behavior is a well recognized reason to discount credibility.").  Here, Plaintiff's treating providers have consistently suspected drug-seeking behavior and declined Plaintiff's requests for additional controlled substances on that basis.  In August of 2003, Dr. Moczygemba

reported that he suspected prescription drug abuse. (T at 199).  In August of 2004, Dr. Jeff Wolff-Gee declined to refill Plaintiff's pain prescription because he had violated his "pain contract" by refusing to submit to a drug test. (T at 269). In November of 2004, Dr. Boyer reported that he suspected narcotic-seeking behavior. (T at 578).  In November of 2005, J. Coffey, a physician's assistant, opined that Plaintiff had exaggerated pain behavior and mannerism and noted "high suspicion" of drug-seeking behavior. (T at 341).  In December of 2005, Vickie Martin, a physician's assistant, refused Plaintiff's request for a refill of pain medication, finding no evidence of pain sufficient to support a prescription.  She reported that Plaintiff left the medical office angry. (T at 336).

In November of 2009, Dr. Narinder Duggal terminated his treating relationship with Plaintiff, finding reason to believe that Plaintiff was "not using prescriptions in a manner that does not present an undue risk of abuse, diversion or harm." (T at 733).  Plaintiff obtained a new provider (Peninsula Community Health Services) and told them he had no history of illicit drug use. (T at 27, 740).  In fact, Plaintiff acknowledged using cocaine, methamphetamines, and marijuana. (T at 758-59).[2]    During   the   second   administrative   hearing,   Plaintiff   denied   abusing

---

[2] During the administrative hearing, Plaintiff admitted that he used cocaine and marijuana in January and May of 2009. (T at 757-58).  He also acknowledged using methamphetamines in March of 2009. (T at 759).

DECISION AND ORDER – CONLEE v COLVIN 12-CV-00388-VEB

prescription medication (T at 763), a statement the ALJ reasonably found untruthful in light of the evidence outlined above.[3]

The ALJ also noted that Plaintiff made inconsistent statements about his work history.  During the second administrative hearing, Plaintiff testified that he worked as a part-time kitchen cook for three or four months while incarcerated[4] for about four hours a day until he "couldn't handle it" anymore. (T at 763).  However, during the first administrative hearing, Plaintiff testified that he worked as a cook in the prison kitchen five days a week from 11:00 in the morning until 6:30 in the evening. (T at 818-19).  Plaintiff also said he began working in the kitchen in April of 2007 (T at 818), a fact contradicted by prison records indicating that Plaintiff was working in the kitchen in August of 2006. (T at 457).  The ALJ acted within her discretion in discounting Plaintiff's credibility on the basis of these discrepancies.

---

[3] In addition to his own admissions of drug use, the ALJ noted that Plaintiff twice violated the terms of his parole due to positive drug tests. (T at 757).  The ALJ concluded that, while Plaintiff's substance abuse exacerbated his mental health symptoms, substance abuse was not material to the determination of disability. (T at 31). The ALJ cited treatments notes indicating that Plaintiff's mental functioning did not reach Listing level severity with or without substance abuse. (T at 31). Plaintiff has not challenged this aspect of the ALJ's decision.

[4] Plaintiff has a significant criminal history.  He was incarcerated from May 2005 through September 2008 for assault. Following his release, he served additional time for several parole violations, including domestic violence charges and positive drug tests. (T at 28).

DECISION AND ORDER – CONLEE v COLVIN 12-CV-00388-VEB

Plaintiff challenges the ALJ's credibility determination and cites the opinions of Dr. Norma Brown, a consultative examiner, which tend to support his claims of disabling non-exertional limitations.  In November of 2004, Dr. Brown diagnosed generalized anxiety disorder, disorder of written expression, mathematics disorder, and reading disorder. (T at 273).  She assessed marked limitations with regard to Plaintiff's ability to learn new tasks and interact appropriately in public contacts. (T at 274). She found severe limitations in terms of Plaintiff's ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting. (T at 274).

In October of 2008, Dr. Brown reaffirmed her prior diagnoses. (T at 624). She assessed marked limitations as to understanding, remembering, and following complex instructions; learning new tasks; exercising judgment and making decisions; interacting appropriately in public contacts; and controlling physical or motor movements and maintaining appropriate behavior. (T at 625).  Dr. Brown found severe limitations as to relating appropriately with co-workers and supervisors and responding appropriately to and tolerating the pressure and expectations of a normal work setting. (T at 625).

In June of 2009, Dr. Brown diagnosed anxiety disorder (NOS), depressive disorder (NOS), reading disorder, disorder of written expression, and mathematics

DECISION AND ORDER – CONLEE v COLVIN 12-CV-00388-VEB

disorder. (T at 640).  She opined that Plaintiff had moderate limitations with regard to understanding, remembering and following complex instructions and learning new tasks. (T at 641).  Dr. Brown assessed marked limitations as to exercising judgment and making decisions, interacting in public contacts, and controlling physical or motor movements and maintaining appropriate behavior. (T at 641).  She found severe limitation with respect to relating appropriately to co-workers and supervisors and responding appropriately to and tolerating the pressure and expectations of a normal work setting. (T at 641).

The ALJ afforded little weight to Dr. Brown's opinions. (T at 28-31).  This decision was supported by substantial evidence.  Dr. Brown's opinions appear to have been based, in large part, upon Plaintiff's subjective complaints.  It is reasonable for an ALJ to discount a physician's opinion predicated on subjective complaints found to be less than credible. *Bray v. Comm'r of Soc. Sec.*, 554 F.3d 1219, 1228 (9th Cir. 2009).  This is particularly so where, as here, the physician relied on incomplete or inaccurate information.  In the 2004 report, Dr. Brown reported that she had "no information" concerning Plaintiff's substance abuse. (T at 273).  In the 2008 report, Dr. Brown found no indication of substance abuse and indicated that several questions concerning the impact of substance abuse on Plaintiff's impairments was "not applicable." (T at 624-25).  Likewise in her 2009

opinion, Dr. Brown reported no indication of substance abuse and found questions related to that topic "not applicable." (T at 640-41).  As outlined above, the record contains strong evidence of drug-seeking behavior and Plaintiff acknowledged that he engaged in substance abuse. (T at 199, 269, 336, 341, 578, 733, 758-59).  The fact that Dr. Brown relied on misinformation regarding this material matter is a valid reason for discounting her opinions.

Further, Dr. Brown's assessment of severe and marked limitations is contradicted by Plaintiff's work history, which showed that he was able to maintain employment in the prison kitchen five days a week, working from 11:00 in the morning until 6:30 in the evening. (T at 457, 818-19).

Lastly, the ALJ's decision to discount Dr. Brown's opinions is supported by the assessment of Dr. Matthew Comrie, a non-examining review physician.  Dr. Comrie found no significant limitations as to Plaintiff's understanding and memory or his ability to sustain concentration and persistence. (T at 287).  Dr. Comrie assessed moderate limitations with regard to completing a normal work-week without interruptions and performing at a consistent pace without an reasonable number of rest periods. (T at 288).  He found moderate limitations with respect to interacting appropriately with the general public and responding appropriately to changes in the work setting. (T at 288).  The ALJ's reliance on Dr. Comrie's

assessment (T at 31) was consistent with applicable law. *See Henderson v. Astrue*, 634 F. Supp. 2d 1182, 1190 (E.D.W.A. 2009)("The opinion of a non-examining physician may be accepted as substantial evidence if it is supported by other evidence in the record and is consistent with it.")(citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)).

Plaintiff argues that the ALJ should have weighed the evidence differently and resolved the conflicting opinions in favor of Dr. Brown's more restrictive assessments. However, it is the role of the Commissioner, not this Court, to resolve conflicts in evidence. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *Richardson*, 402 U.S. at 400. If the evidence supports more than one rational interpretation, this Court may not substitute its judgment for that of the Commissioner. *Allen v. Heckler*, 749 F.2d 577, 579 (9th 1984). If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the Commissioner's finding is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Here, the ALJ's credibility assessment and decision to discount Dr. Brown's opinions were supported by substantial evidence and should be sustained.

DECISION AND ORDER – CONLEE v COLVIN 12-CV-00388-VEB

**B.     Step Five Analysis**

At step five of the sequential evaluation, the burden is on the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984). If a claimant cannot return to his previous job, the Commissioner must identify specific jobs existing in substantial numbers in the national economy that the claimant can perform. See *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir.1995).

The Commissioner may carry this burden by "eliciting the testimony of a vocational expert in response to a hypothetical that sets out all the limitations and restrictions of the claimant." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.1995). The ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record. *Gamer v. Secretary of Health and Human Servs*., 815 F.2d 1275, 1279 (9th Cir.1987).  "If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that claimant has a residual working capacity has no evidentiary value." *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).

In this case, Michael Swanson, a vocational expert, testified at the first administrative hearing.  Mr. Swanson identified sedentary, unskilled jobs that a

hypothetical claimant with Plaintiff's residual functional capacity could perform. (T at 834-38).  In its remand Order, the Appeals Council directed the ALJ to "[o]btain supplemental evidence" from a vocational expert. (T at 39).[5]  The ALJ did not call a vocational expert at the second administrative hearing or seek any additional vocational expert evidence.  Rather, the ALJ concluded that such additional evidence was unnecessary because, while she had amended her RFC findings slightly, the jobs cited by Mr. Swanson at the first hearing were still applicable.[6]  (T at 33).  In particular, the jobs identified by Mr. Swanson (final assembler, document preparer, and addressor) were sedentary, unskilled jobs that involve working with things, rather than co-workers or the general public. (T at 33).  In her second decision, the ALJ found that Plaintiff retained the RFC to perform such work, making additional testimony from a vocational expert unnecessary. (T at 33).

---

[5] The Remand Order contained several instructions.  The ALJ was ordered to give further consideration to Plaintiff's RFC , obtain opinion evidence from a medical expert concerning Plaintiff's mental impairments, and obtain supplemental evidence from a vocational expert. (T at 38-39).  The Appeals Council's primary concern was that, while the ALJ had identified Plaintiff's mental impairments and recognized them as severe, she had not articulated in work-related terms how those impairments would limit Plaintiff's ability to perform work-related activities. (T at 37).  In addition, the Appeals Council wanted the ALJ to provide a further explanation for her decision to discount the opinion of the consultative examiner (Dr. Brown). (T at 38).

[6] In her first RFC assessment, the ALJ found that Plaintiff retained the RFC to employ reason within normal limits, with "good" concentration and social skills. (T at 52).  In her second RFC assessment, the ALJ concluded that Plaintiff retained the mental RFC to perform simple, repetitive tasks, but found that he was limited to working with "things, not people." (T at 25).

DECISION AND ORDER – CONLEE v COLVIN 12-CV-00388-VEB

Plaintiff does not directly challenge the ALJ's RFC determination and does not articulate any specific inconsistently between the jobs identified by Mr. Swanson and his RFC.  Rather, Plaintiff focuses on the fact that the ALJ did not technically comply with the Appeals Council's Remand Order.[7]  However, the Appeals Council was primarily concerned with ensuring that the hypothetical questions posed to the vocational expert "reflect[ed] the specific capacity/limitations established by the record as a whole." (T at 39).  The ALJ concluded that the hypothetical questions presented to Mr. Swanson at the first hearing reflected the RFC established by the record as a whole and as further amended in the second decision.  This was a reasonable conclusion. In other words, the ALJ reasonably concluded that the additional limitation found on remand (*i.e.* the need to work with "things, not people") does not preclude performance of the jobs identified by Mr. Swanson during the first administrative hearing.  Notably, Plaintiff does not offer any

---

[7]  Even if Plaintiff had challenged the ALJ's RFC determination and/or argued that it was inconsistent with the jobs identified by the vocational expert during the first hearing, there would be sufficient evidence to sustain the ALJ's decision.  The ALJ cited medical evidence, including the opinion of Dr. Weiss (a non-examining medical expert), to the effect that Plaintiff was "capable of simple, repetitive tasks that would not involve dealing with the public." (T at 31-32, 783). Plaintiff's work history, which showed that he was able to maintain employment in the prison kitchen five days a week, working from 11:00 in the morning until 6:30 in the evening (T at 457, 818-19), also demonstrates an ability to perform the jobs identified by Mr. Swanson (final assembler, document preparer, and addressor). Moreover, the Appeals Council's denial of Plaintiff's second request for review indicates its belief that the ALJ had satisfied the Remand Order to the extent the Order sought a redetermination of Plaintiff's RFC.

DECISION AND ORDER – CONLEE v COLVIN 12-CV-00388-VEB

evidence or argument to contradict this conclusion – *i.e.* to suggest that Plaintiff's RFC, as amended in the second decision, precluded him from performing the jobs identified by Mr. Swanson at the first hearing.  Thus, there was no reversible error in the ALJ's decision not to call a vocational expert in connection with the second hearing.

Plaintiff offers no authority to suggest that the ALJ's decision not to follow this particular aspect of the Appeals Council's remand Order strictly constitutes a *per se* ground for reversal.  In fact, the caselaw is to the contrary.  *See, e.g. Ruikka v. Colvin*, No. CV-12-3112, 2014 U.S. Dist. LEXIS 22252, at *33 (E.D. Wash. Feb. 20, 2014)("While the ALJ failed to fully comply with the Appeals Council remand order, this court may not award benefits punitively. A claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be.")(internal citations omitted).

Moreover, the Appeals Council had an opportunity to address this issue in the context of Plaintiff's request for review of the ALJ's second decision.  The Appeals Council denied the request, finding "no reason under our rules to review the [ALJ's] decision." (T at 8).  If the Appeals Council believed the violation of its Remand Order was a material issue, it would have granted the request for review and addressed the ALJ's failure to obtain supplemental vocational expert testimony in

that context.  There is authority in this Circuit, including an unpublished decision from the Ninth Circuit Court of Appeals, to the effect that the Appeals Council's denial of a second request for review deprives the District Court of jurisdiction to review any failure by the ALJ to follow a prior Remand Order. *See Tyler v. Astrue*, 305 Fed. Appx. 331, 332 (9th Cir. 2008)("The district court properly declined to evaluate whether the ALJ's second decision satisfied the demands of the Appeals Council's remand. . . . [F]ederal courts only have jurisdiction to review the final decisions of administrative agencies. When the Appeals Council denied review of the ALJ's second decision, it made that decision final, and declined to find that the ALJ had not complied with its remand instructions.")(internal citations omitted); *Boyd v. Astrue*, No. C10-1552, 2011 U.S. Dist. LEXIS 99468, at *4-5 (W.D. Wash. July 18, 2011)("Whether an ALJ complies with an Appeals Council remand order is an internal agency matter which arises before the issuance of the agency's final decision. Section 405(g) does not provide this Court with authority to review intermediate agency decisions that occur during the administrative review process."); *Thompson v. Astrue*, No. EDCV, 09-1182, 2010 U.S. Dist. LEXIS 75596, at *6 (C.D. Ca. July 27, 2010)("[T]he Court's role is to determine whether the ALJ's final decision is supported by substantial evidence, not whether the ALJ complied with the Appeals Council's remand order.").

It is also noteworthy that the ALJ followed the Appeals Council's Remand Order in all other respects – *i.e.* by providing additional, detailed reasons for discounting Dr. Brown's opinions, by obtaining additional medical evidence in the form of testimony from Dr. William Weiss, a medical expert, and by revising the RFC assessment to include a specific work-related limitation tied to Plaintiff's mental health impairments. (T at 31-32).

Accordingly, this Court finds no legal basis to disturb the ALJ's step five analysis. This is, of course, not to suggest that this ALJ (or any ALJ) is entitled to flout directives from the Appeals Council or to disregard its instructions.  However, the scope of this Court's jurisdiction and discretion is limited and the focus is on whether substantial evidence supports the *final* decision of the Commissioner.  Here, for the reasons outlined above, substantial evidence does support the conclusion that Plaintiff is not disabled within the meaning of the Social Security Act.  The ALJ had valid reasons for discounting Plaintiff's credibility – namely, the significant evidence of drug-seeking behavior as documented by several treating providers.  In addition, the ALJ's analysis of the medical evidence was thorough and sufficiently supported by the record to be sustained under the deferential standard of review applicable here.

## V. CONCLUSION

After reviewing the administrative record, this Court finds substantial evidence supports the Commissioner's decision, including the objective medical evidence and supported medical opinions. The ALJ examined the record, afforded appropriate weight to the medical evidence, including the assessments of the examining medical providers, consultative examiner, and the non-examining consultant, and afforded the subjective claims of symptoms and limitations an appropriate weight when rendering her decision that Plaintiff is not disabled. This Court finds no reversible error and because substantial evidence supports the ALJ's decision, the Commissioner is GRANTED summary judgment and Plaintiff's motion for judgment summary judgment is DENIED.

DECISION AND ORDER – CONLEE v COLVIN 12-CV-00388-VEB

## VI. ORDERS

**IT IS THEREFORE ORDERED** that**:**

Plaintiff's motion for summary judgment, **Docket No. 19**, is **DENIED.**

The Commissioner's motion for summary judgment, **Docket No. 20**, is **GRANTED**.

The District Court Executive is directed to file this Order, provide copies to counsel, enter judgment in favor of the Commissioner and **CLOSE** the file.

DATED this 31st day of March, 2014.

/s/Victor E. Bianchini

VICTOR E. BIANCHINI
UNITED STATES MAGISTRATE JUDGE

DECISION AND ORDER – CONLEE v COLVIN 12-CV-00388-VEB